## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

| | | |
|---|---|---|
| UNITED HEALTHCARE SERVICES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:26-CV-60-DJH |
| | ) | |
| CONCORD COMPANY OF TENNESSEE, PLLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

### REPLY BRIEF IN SUPPORT OF DEFENDANT CONCORD COMPANY OF TENNESSEE PLLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Chad E. Wallace, KY BPR No. 92832
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
**602 Sevier Street, Suite 300**
Johnson City, Tennessee 37604
Telephone: (423) 928-0181
Facsimile: (423) 928-5694
Email: cwallace@bakerdonelson.com

Anthony Argiropoulos, *pro hac vice*
Thomas Kane, *pro hac vice*
William Gibson, *pro hac vice*
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
281 Witherspoon Street
3rd Floor
Princeton, NJ 08540
Telephone: 609.490.4841
Email: aargiropoulos@bakerdonelson.com
*Attorneys for Defendant Concord Company of Tennessee, PLLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT.......................................................................................................................1

I.  THE COMPLAINT DOES NOT RAISE A PLAUSIBLE INFERENCE OF FRAUD .........1

II.  UNITED MISCHARACTERIZES *BLEDSOE* AND FAILS TO SATISFY RULE 9(b) ......5

III.  *GRABLE* DOES NOT PROVIDE A BASIS FOR FEDERAL JURISDICTION...................8

IV.  UNITED IS COLLATERALLY ESTOPPED FROM RELITIGATING ISSUES DECIDED IN THE NSA ARBITRATION—INCLUDING JURISDICTION ......................................14

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................ 1, 3, 4, 7

*Atlantic ER Physicians Team Pediatric Assocs., PA v. UnitedHealth Grp., Inc.*, No. 20-20083
    (RMB/AMD), 2022 WL 950815, at *4 (D.N.J. Mar. 30, 2022)............................................. 12

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................... *passim*

*Central Transport, Inc. v. Four Phase Systems, Inc.*,
    936 F.2d 256 (6th Cir. 1991) ...................................................................................... 14

*Franchise Tax Board v. Construction Laborers Vacation Trust*,
    463 U.S. 1 (1983)..................................................................................................... 9

*Grable and Sons Metal Prods. Inc. v. Darue Engineering and Manufacturing*,
    545 U.S. 308 (2005)..................................................................................................... *passim*

*In re Meador*,
    352 B.R. 832 (Bankr. E.D. Tenn. 2006) .................................................................... 15

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982).................................................................................................... 14

*Merrell Dow Pharm. Inc. v. Thompson*,
    478 U.S. 804 (1986)............................................................................................ 8, 9, 10

*Samayoa v. Smith*,
    No. 5:25-cv-190-BJB, 2026 WL 483243 (W.D. Ky Feb. 20, 2026) ....................................... 14

*Taylor v. Peoples Gas Light & Coke Co.*,
    656 N.E.2d 134 (Ill. App. 1995) ................................................................................. 15

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009)................................................................................................... 14

*Treinies v. Sunshine Mining Co.*,
    308 U.S. 66 (1939)..................................................................................................... 14

ii

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
  501 U.S.  (6th Cir. 2007)................................................................................... 1, 5, 6, 7

*UnitedHealthcare of Pennsylvania, Inc. v. NorthStar Anesthesia of Pennsylvania, LLC*,
  No. 25-7187, 2026 WL 1145885 (E.D. Pa. Apr. 28, 2026)......................................... 11, 12, 13

Statutes

28 U.S.C. § 1331............................................................................................... 8, 9

42 U.S.C. § 300gg-111(c)(5)(E)(i) ................................................................................ 9, 13

Rules

Fed. R. Civ. P. 9(b) ................................................................................................. *passim*

Fed. R. Civ. P. 11(c) ...................................................................................................... 12

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 15

Other Authorities

MassHealth, List of Explanation of Benefit (EOB) Codes Appearing on the Remittance Advice,
  https://www.mass.gov/doc/eob-codes-0/downloadv ....................................................3

U.S. Census Bureau, Dual Health Insurance Coverage Declining for Adults Age 65 and Over
  (Apr. 18, 2024), https://www.census.gov/library/stories/2024/04/older-adults-health-
  coverage.html ...............................................................................................3

Defendant Concord Company of Tennessee, PLLC ("Concord" or "Defendant"), by and through its undersigned counsel, hereby submits this Rely Brief in further support of its Motion to dismiss the Complaint of Plaintiff United Healthcare Services, Inc. ("United" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

United's Opposition Brief is notable not for what it says, but for what it leaves out. As the following will demonstrate, United has:

- Failed to provide any explanation for the large gap between what the documents cited in the Complaint actually say, and what United claims they say. *See infra* at Section I.

- Cherry-picked phrases from the Sixth Circuit's decision in *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 U.S. 493 (6th Cir. 2007), without telling the Court the test that *Bledsoe* establishes for Fed. R. Civ. P. 9(b) or even attempting to apply that test to the allegations in the Complaint. *See infra* at Section II.

- Failed to call the Court's attention to a case that was decided days before United filed its Opposition Brief, and to which it was a party, and which specifically rejected the same jurisdictional argument United makes here about the same substantive claims. *See infra* at Section III.

- Ignored key tenets of the doctrine of judicial estoppel that command dismissal of its case. *See infra* at Section IV.

For these reasons, as set forth more fully below and in Plaintiff's Moving Brief, the Complaint should be dismissed.

## ARGUMENT

## I.    THE COMPLAINT DOES NOT RAISE A PLAUSIBLE INFERENCE OF FRAUD.

In its Opening Brief, Concord demonstrated that the documents referenced in United's Complaint simply do not say what United claims they say, and, therefore, fail to plausibly plead fraud consistent with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*,

1

556 U.S. 662 (2009). United gives no meaningful response to this analysis—all but conceding that Concord is correct.

For example, United's entire fraud theory is premised on the contention that the Provider Admittance Advice ("PRA") reproduced at Paragraph 61 of the Complaint "unambiguously" told Concord that the claim at issue was a Medicare claim. According to United:

> With its payment, United sent Concord a PRA providing details on the patient, the patient's status as a member of a Medicare Advantage plan, the claim, and United's reimbursement…The PRA was printed on letterhead labeled UnitedHealthcare Medicare Solutions, indicating that it was a United-managed Medicare Advantage plan. The PRA also contained an "ineligible explanation code" explaining why United had paid the amount it did for this patient's services. The code in this case was 0888, which reflects, as stated on the PRA, that the patient was a Medicare patient ("MCARE LIMITING CHARGE [] DO NOT REMIT BILL [MEMBER]"). Complaint ¶¶ 61-63.

This allegation does not survive even cursory scrutiny. United claims that the PRA was "printed on letterhead labeled UnitedHealthcare Medicare Solutions." ***But those words appear nowhere on the document reproduced at Paragraph 61 of the Complaint—and United does not contest this fact in its Opposition Brief.*** United also claims that the PRA explains that code "0888" means that the patient was a Medicare patient because it stated "MCARE LIMITING CHARGE [] DO NOT REMIT BILL [MEMBER]." ***But, again, the language "MCARE LIMITING CHARGE [] DO NOT REMIT BILL [MEMBER]" does not appear anywhere on the document reproduced at Paragraph 61 of the Complaint—and, again, United does not contest this fact in its Opposition Brief.*** And even if that language did appear, both "MCARE LIMITING CHARGE [] DO NOT REMIT BILL [MEMBER]" and code "0888" are idiosyncratic codewords that United might use internally, but do not necessarily communicate to anyone outside of United that the patient was a Medicare patient. Code "0888" is *not* a universal insurance code. MassHealth, for example, uses a code "0888" in its admittance advice forms, but

to MassHealth code "0888" means "DCN INVALID FOR ATTACHMENT CROSS-REFERENCE."[1]

Instead of dealing with these obvious deficiencies, and instead of providing some explanation for the large gap between what the document actually says and what United claims it says,[2] United simply ignores this issue entirely and labels the PRA "unambiguous." United Opposition Brief at 4. The "unambiguous" label cannot, however, survive the plausibility analysis this Court must conduct under *Twombly* and *Iqbal*.

A similar analysis applies to the "documentation" that United submitted to the NSA arbitrator in order to "prove" that the claim was ineligible under the NSA. At Paragraph 71 of the Complaint United attaches an attestation that the claim was "not eligible for IDR under the NSA because this Member is enrolled in a Medicare plan." *Id.* ¶ 71. That attestation supposedly attached a copy of the PRA discussed above. *Id.* ¶ 72. If United did actually attach the PRA, then the submission suffers from the same defects discussed above, and the arbitrator could have reasonably discounted the submission because the PRA was ambiguous. But it is not even clear from the pleading that the subject submission was, in fact, the PRA that was attached. The document reproduced at Paragraph 71 of the Complaint shows that the supporting documentation that was attached was an ".xlsx" file, which is the file name extension for a Microsoft Excel

---

[1]    *See* MassHealth, List of Explanation of Benefit (EOB) Codes Appearing on the Remittance Advice, https://www.mass.gov/doc/eob-codes-0/downloadv.

[2]    The only new point that United adds to this analysis is its claim (again, in a footnote) that Concord should have known the claim was a Medicare claim simply because the patient was 67 years old. *See* United Opposition Br. at 3. But not all adults 65 and older are covered exclusively by Medicare. According to the U.S. Census Bureau, 98.9% of such elderly adults have Medicare coverage, and 39.6% of them have dual health insurance coverage with both Medicare and private health insurance. *See* U.S. Census Bureau, Dual Health Insurance Coverage Declining for Adults Age 65 and Over (Apr. 18, 2024), https://www.census.gov/library/stories/2024/04/older-adults-health-coverage.htm. Age alone is not evidence of Medicare claim.

3

spreadsheet. The PRA that was reproduced at Paragraph 61 was obviously not a spreadsheet. Regardless, whichever spreadsheet that was actually attached has not been reproduced in the Complaint or explained in United's Opposition Brief.

On this point, United now concedes that Concord is correct, and the PRA was never actually submitted to the NSA arbitrator, but labels that fatal flaw to be "immaterial." According to United (in an argument relegated to a footnote):

> Concord's observation that the supporting documentation uploaded with **United's August 5, 2025, attestation did not include the PRA** and bore a ".xlxs" file extension is immaterial. The substance of United's attestation was that the claim was "not eligible for IDR under the NSA because this Member is enrolled in a Medicare plan."…Concord's attempt to shift focus to the file type of a document United transmitted to the IDRE is a transparent effort to distract from its own misconduct. United Opposition Br. at 4 n.2 (citations omitted; emphasis added).

This is not an ancillary point; it is the very foundation of United's claims of "fraud" as to Concord and "corruption" as to the NSA arbitrator. In United's world, Concord should understand codes that are unique and internal to United and see imaginary words on a PRA that do not actually appear. If Concord fails to do so, it is guilty of fraud. United also apparently believes that once it "attests" to a claim being a Medicare claim, the matter is decided and its word must be taken to be proven fact—even if the "documentation" it submits does not support that contention. That is not how the law of fraud, or the pleading standards of *Twombly* and *Iqbal*, work. Indeed, the mere fact that United now admits that its allegation in Paragraph 71 of the Complaint is false (*i.e.*, that it never submitted the PRA to the NSA arbitrator) is enough to establish that: (1) it has failed to plausibly plead fraud; and/or (2) its own incompetence in providing the wrong document to the NSA Arbitrator was an intervening cause that broke the causal chain.

United's allegation of fraud is simply not plausible. Applying "judicial experience and

4

common sense" as *Twombly* requires this Court to do, 550 U.S. at 570, the most plausible explanation is that: (1) United sent Concord an ambiguous PRA that used idiosyncratic codes; and (2) United erroneously sent the NSA arbitrator the wrong file—a file that did not support United's eligibility argument. United is not a victim not of fraud, but of its own sloppiness.

## II.   UNITED MISCHARACTERIZES *BLEDSOE* AND FAILS TO SATISFY RULE 9(b).

United fallaciously argues that it need not satisfy Fed. R. Civ. P. 9(b)'s particularity requirement because of the Sixth Circuit's decision in *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 U.S. 493 (6th Cir. 2007). But United merely cherry-picks a few phrases out of *Bledsoe* without explaining the test of Rule 9(b) compliance that the case establishes. The Complaint in this matter clearly fails that test.

In *Bledsoe*, a respiratory staff therapist and former employee of the defendant alleged that he has firsthand knowledge of a pattern of fraudulent billing practices that included upcoding, misuse of a doctor's medical provider number, double billing, improper changing of patients' status, and improper premature discharging of patients. *Id.* at 497-98. The former employee brought a *qui tam* lawsuit under the False Claim Act, and the government declined to intervene. *Id.*

On its second trip to the Sixth Circuit, the court affirmed the District Court's dismissal of the remaining fraud claims under Rule 9(b). *Id*. at 523-24. Like United here, the Relator in that case "argued that it is unnecessary that the allegations in his SAC identify specific false claims; rather, according to the Relator, his complaint is adequate if it instead pleads a false scheme with particularity." *Id.* at 504. Then, in a passage quoted in part in United's Opposition Brief, the court found that "where a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides specific examples of specific false claims submitted to the

government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme." *Id.* at 510. According to United, that passage is the end of story. But for the *Bledsoe* Court, it was just the beginning.

As the Sixth Circuit explained, the general principle begs the most important question:

> The critical question then becomes how broadly or narrowly a court should construe the concept of a fraudulent scheme. If a court were to construe a fraudulent scheme at a high level of generality—*for example, if the court concluded that the fraudulent scheme consisted of "the defendant hospital submitting false claims to Medicare or Medicaid"—then the court would, in effect, violate the principle that improperly pled allegations of fraud do not become adequate merely by placing them in the same complaint with allegations that are sufficient under Rule 9(b). Allowing such a complaint to go forward in toto would fail to provide defendants with the protections that Rule 9(b) was intended to afford them:* Defendants would not have notice of the specific conduct with which they were charged, they would be exposed to fishing expeditions and strike suits, and they would not be protected from "spurious charges of immoral and fraudulent behavior." *Bledsoe*, 501 U.S. at 510 (emphasis added).

The Sixth Court then adopted a specific test to prevent such threadbare allegations of a fraudulent scheme from surviving Rule 9(b):

> In order for a relator to proceed to discovery on fraudulent scheme, the claims that are pled with specificity must be characteristic examples that are illustrative of the class of all claims covered by the fraudulent scheme. The examples of false claims pled with specificity should, in all material respects, including the general time frame, substantive content, and relation to the allegedly fraudulent scheme, be such that *a materially similar set of claims could have been produced with a reasonable probability by a random draw from the total pool of claims. Id.* at 510-11 (emphasis added; internal citations and quotations omitted).

On this basis, the Sixth Circuit affirmed dismissal of the *qui tam* complaint. *Id.* at 514.

Applying the full *Bledsoe* test—instead of just a few cherry-picked phrases—it is clear that the Complaint in this case cannot meet the Rule 9(b) standard for at least two reasons. First,

6

the Complaint does not plead "a complex and far-reaching fraudulent scheme with particularity." *Id.* at 510. In fact, the Complaint does plead any details of any scheme at all. Rather, the Complaint merely: (1) describes a single claim that is supposedly "fraudulent" (*see* Section I, *supra*); (2) states that Concord has submitted at least 650 other claims to the NSA's IDR process (Complaint ¶ 30); and (3) claims—based on an internet article—that 20% of all NSA IDR disputes nationally are based on ineligible claims (*id.* ¶ 49). This is exactly the "high level of generality" that the *Bledsoe* Court warned against, where the only fraudulent "scheme" that is pled is that the Defendant allegedly submitted a single fraudulent claim for NSA arbitration. *Bledsoe*, 501 U.S. at 510. Whether judged under the plausibility standards of *Twombly* and *Iqbal*, or the more-rigorous Rule 9(b) standard of *Bledsoe*, that is neither a plausible, nor particularly pleaded, fraudulent scheme. It is, at best, one claim and a titanic leap of logic.

Second, the Complaint fails *Bledsoe's* "reasonable probability" test. Because the Complaint only gives details on a single allegedly fraudulent claim, there is no possible way to determine whether "a materially similar set of claims could have been produced with a reasonable probability by a random draw from the total pool of claims." *Id.* at 511. One claim is one claim and can never—without something more—be a pattern.

Moreover, in applying *Bledsoe*, the Court should take note of an important difference between the Relator in *Bledsoe* and United in this case. In *Bledsoe*, the Relator was a former employee of the defendant. He could, therefore, be expected to have knowledge of *some* of the fraudulent claims, but there is no way a single employee could have knowledge of *every* fraudulent claim submitted by an allegedly corrupt hospital. Only the hospital could have access to all those claims. Discovery would, therefore, be a necessity. Here, by contrast, United—the largest health insurer in the world—unquestionably has perfect knowledge of exactly which and

7

how many of the 650+ claims that Concord submitted to the NSA IDR process were supposedly ineligible. In fact, United has already litigated the eligibility of each and every one of those claims. No discovery is necessary. If the Complaint fails to plead each supposedly "fraudulent" claim with particularity, that is United's choice—not because of a lack of information.

### III.    *GRABLE* DOES NOT PROVIDE A BASIS FOR FEDERAL JURISDICTION.

United misleadingly cites *Grable and Sons Metal Prods. Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308, 314 (2005), as a basis for federal jurisdiction in this case. In fact, *Grable* is a narrow exception to the broader rule of *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986). *Grable* does not apply to this case; *Merrell* does.

In *Merrell*, the Court held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treatises of the United States" pursuant to the federal question jurisdiction statute, 28 U.S.C. § 1331. *Merrell*, 478 U.S. at 817. *Merrell* is still good law, and it was not abrogated or modified by *Grable*. An analysis of the facts of each case shows why they are consistent, and why the holding of *Merrell* applies here.

In *Merrell*, the plaintiffs alleged that children were born with multiple deformities as a result of their mothers' ingestion of the drug Bendectin during pregnancy. *Id.* at 805. They further alleged that Bendectin was "misbranded" in violation of the FDC Act ("FDCA") because its labeling did not provide adequate warning that its use was potentially dangerous. *Id.* at 805-06. Plaintiff further alleged that this violation of the FDCA created a rebuttable presumption of negligence and that the violation was a proximate cause of the injuries. *Id.* at 806.

The Court began its analysis by noting that "the vast majority of cases brought under the

8

federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Id.* at 808. However, on rare occasions, a case may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)).

There is no federal cause of action for FDCA violations. *Id.* at 810. Therefore, it would "flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law, rather than a federal action under federal law." *Id.* at 812. In other words, "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Id.* at 813.

The claim in *Merrell* exactly parallels the claim that United is making here. Everyone agrees that there is no independent federal cause of action under the NSA, and the only statutory basis to challenge an NSA award is under the incorporated sections of the FAA. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i) (an IDR determination "shall ***not*** be subject to judicial review, except in a case [that would justify vacating the award under the Federal Arbitration Act]."). *See also* United Opposition Br. at 8 ("United agrees with Concord that the proper avenue to challenge a payment determination on eligible, properly submitted IDR claims is to seek vacatur under the incorporated provisions of the FAA.") (emphasis omitted). United, like the *Merrell* plaintiffs, contends that a federal question exists for the purposes of 28 U.S.C. § 1331 because the interpretation of a federal statute, the NSA, is an element of its common law fraud claim. But just as in *Merrell*, it would "flout, or at least undermine, congressional intent to conclude that the

9

federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be [an element of the fraud claim] rather than a federal action under federal law." *Id.* at 812.

*Grable*, by contrast, arose under a unique and entirely different set of circumstances. In *Grable*, the IRS had seized real property owned by Grable to satisfy a federal tax delinquency and gave Grable notice by certified mail before selling the property to a third party. *Grable*, 545 U.S. at 310. Five years later, Grable brought a state court action to quiet title, arguing that the IRS had failed to personally serve him with notice of the sale (as required by statute). *Id.* at 311. The action was removed, and the Supreme Court eventually held that removal was proper under those unique circumstances.

Importantly, the *Grable* Court expressly reaffirmed the continuing viability of *Merrell*. *Id.* at 316. Discussing *Merrell*, it noted that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases." *Id.* at 318. The facts of *Grable*, however, were sufficiently unique to justify federal jurisdiction because there would ***not*** be an onslaught of cases:

> [I]t is the rare state quiet title action that involves contested issues of federal law. Consequently, jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation. Given the absence of threatening structural consequences and the clear interest of the Government, its buyers, and its delinquents have the in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim. *Id.* at 319.

United's case clearly does not fall within the narrow *Grable* exception to *Merrell*. United's own pleadings evidence that it is planning a flood of litigation over NSA arbitration awards with which it disagrees if it can find a federal forum. For example:

- "In only the first nine months after the IDR system opened in 2022, about 190,000 disputes were filed—more than **ten times** the number expected for the first year alone." Complaint ¶ 46 (emphasis in original).

- "The number of claims submitted to IDR has only increased. From mid-2022 to May 2025, more than 3.3 **million** disputes were filed." *Id*. (emphasis in original).

- "Congress assumed (evidently incorrectly) that providers would act in good faith by submitting only qualified claims to the NSA IDR process. Unfortunately, nearly one in five claims submitted to IDR is ineligible." United Opposition Br. at 6.

If United's own pleadings are credited, then one in every five of the 3.3 million IDR's filed since mid-2022 would be subject to challenge in federal court under United's jurisdictional theory. That would be more than 660,000 federal cases to date—and more growing every day. If United—the largest and most profitable health insurer in the world—was willing to bring a federal lawsuit over a $1,009.64 arbitration award that it has not even paid, then the Court can confidently assume that it will do so as to every single claim it can. In the parlance of *Grable*, 660,000+ new cases is not "rare." *Grable*, 545 U.S. at 319. Rather, 660,000+ new cases would severely "threaten…the normal currents of litigation" and have serious "structural consequences." *Id.*

The most disturbing part of United's *Grable* argument is that it failed to disclose that United lost this argument before another federal District Court days before United submitted its Opposition Brief here.[3] *See UnitedHealthcare of Pennsylvania, Inc. v. NorthStar Anesthesia of*

---

[3]    United has been criticized by at least one federal District Court for failing to disclose adverse precedents in cases to which it was a party:

> In the time since their removal, as Plaintiffs note in their briefs, United Defendants have been parties to several cases in which federal district courts have rejected their arguments for ERISA preemption in similar legal actions. Unless and until there is clearly established precedent, if United Defendants argue for

*Pennsylvania, LLC*, No. 25-7187, 2026 WL 1145885 (E.D. Pa. Apr. 28, 2026). The District

Court's description shows that United brought nearly identical claims in that case:

> An anesthesia company working in a hospital provided services to a patient. The provider billed these services to a health insurer. The patient qualified for Medicaid. The health insurer declined payment beyond the amount owed under Medicaid. The provider disagreed as to the amount of the insurer's payment and—either mistakenly as it contends or fraudulently as the insurer contends—started a Congressionally-mandated dispute resolution process everyone agrees does not apply to Medicaid patients. Congress passed the "No Surprises Act" four years ago defining how the insurer and provider resolve this disputed balance through a third-party decision-maker. We today address what happens when the insurer does not like the way Congress mandated the protocol for resolving reimbursement disputes. The insurer now invokes our limited subject matter jurisdiction asking us to declare the provider's conduct in seeking payment on services rendered to a Medicaid patient it knew is ineligible for the dispute resolution process is unlawful and fraudulent, declare Medicaid and Medicare claims are not eligible for the dispute resolution process under the No Surprises Act, declare awards issued on unqualified services are non-binding and not payable, and enjoin the provider from continuing to submit false attestations and ineligible claims under the process set by Congress in the No Surprises Act. *Id.* at *1.

In that case, like this one, United predicates federal jurisdiction on *Grable*, but the

District Court has already rejected that jurisdictional claim, finding that United "misunderstands

the limited nature of our subject matter jurisdiction." *Id.*

---

> federal subject matter jurisdiction in the future based on ERISA preemption, they must disclose to the court the caselaw that cuts against their legal arguments (and themselves in particular). United Defendants should lay out that federal district courts in New Jersey, Pennsylvania, Nevada, Arizona, Florida, and perhaps elsewhere have denied their arguments for ERISA preemption. If United Defendants fail to do so, they will certainly be subject to attorneys' fees based on § 1447(c), as well as Fed. R. Civ. P. 11(c) sanctions. Defendants are hereby forewarned.

*Atlantic ER Physicians Team Pediatric Assocs., PA v. UnitedHealth Grp., Inc.*, No. 20-20083 (RMB/AMD), 2022 WL 950815, at *4 (D.N.J. Mar. 30, 2022).

12

The court explained that United failed the first and third elements of test for jurisdiction under *Grable* because: (1) there is no federal issue raised in United's claim because "there is no dispute the [NSA] does not apply to Medicare, Medicaid, and other federal insurance programs" (*id.* at *7); and (2) United's "fraud claim does not fall within the narrow category of claims raising substantial federal issues." *Id.* at *8.

The court also noted that—just like this case—United had a statutory remedy that it knowingly waived:

> Congress provided a specific remedy under the No Surprises Act which UnitedHealthcare elected not to pursue. Award determinations made by an Independent Dispute Resolution entity are binding except in "the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the [Independent Dispute Resolution] entity involved regarding such claim" and "shall not be subject to judicial review, except in a case described in any of the paragraphs" in section 10(a) of the Federal Arbitration Act. Congress through Sections 10(a)(1) and (4) of the Federal Arbitration Act allows us to vacate an award "procured by corruption, fraud, or undue means" and where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." UnitedHealthcare could have, but chose not to, pursue the defined remedy set by Congress under the Act. It instead elected to allege a common law fraud claim and bootstrap the common law claim into declaratory and injunctive relief with no federal jurisdictional basis. *Id.* at * 7.

This analysis equally applies to United's attempts to posture here. The District Court rejected United's claim, also made in this case, that the phrase "the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the [Independent Dispute Resolution] entity involved regarding such claim" creates federal jurisdiction to hear a common law fraud claim. *See* United's Br. at 10 (discussing 42 U.S.C. § 300gg-111(c)(5)(E)(i)). Rather, that provision, read as a whole, merely incorporates the vacatur provisions of Section 10(a) of the Federal Arbitration Act—an avenue for relief that United has specifically disavowed. *See, e.g.,*

13

United Opposition Br. at 2 ("United is not asking the Court to vacate the Independent Dispute Resolution Entity's ('IDRE') payment determination or to reconsider whether the IDRE selected the correct reimbursement amount."); *id.* at 8 ("United is ***not*** challenging the IDRE's payment determination.") (emphasis in original); *id.* at 10 ("United does not seek vacatur of the IDRE determination."); *id.* at 16 n.5 ("But United does not seek vacatur.").

IV.  **UNITED IS COLLATERALLY ESTOPPED FROM RELITIGATING ISSUES DECIDED IN THE NSA ARBITRATION—INCLUDING JURISDICTION.**

United makes two arguments against the application of collateral estoppel to its claims in this case, but both are unavailing.

First, United argues that the arbitration is not entitled to collateral estoppel effect because the NSA arbitrator supposedly lacked jurisdiction. This argument fails because United raised, and lost, its jurisdictional argument in the arbitration proceedings.[4] *Samayoa v. Smith*, No. 5:25-cv-190-BJB, 2026 WL 483243, at *5 (W.D. Ky Feb. 20, 2026) (Beaton, J.) ("The federal Respondents pressed the potential jurisdictional defects in the Central District, however, and that court rejected their position. That full and fair opportunity to litigate the Central District's jurisdiction prevents the federal Respondents from re-litigating the question here: *res judicata* principles 'apply to questions of jurisdiction as well as to other issues.'") (quoting *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939)). *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 (2009) ("So long as respondents or those in privity with them were parties to the [first] proceeding, and were given a fair chance to challenge the [first court's] subject-matter jurisdiction, they cannot challenge it now."); *Insurance Corp. of Ireland v. Compagnie des*

---

[4]    The Sixth Circuit has noted that "federal courts ordinarily give preclusive effect to arbitrations." *Central Transport, Inc. v. Four Phase Systems, Inc.*, 936 F.2d 256, 259 (6th Cir. 1991).

*Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment.").

Second, United argues that it did not receive a "full and fair opportunity" to litigate the jurisdictional issue in the arbitration because: "The IDR process is not an adversarial proceeding. There is no discovery, no evidentiary hearing, and no opportunity for cross-examination." United Opposition Br. at 12. But the doctrine of collateral estoppel does not require all the procedural devices available in federal court litigation. "The 'full and fair opportunity' requirement is satisfied even if only a slight amount of evidence was presented on the disputed matter decided in the first suit. Further, 'actively litigated' does not mean thoroughly litigated, but only that the parties disputed the issue and the trier of fact resolved it." *In re Meador*, 352 B.R. 832, 840 (Bankr. E.D. Tenn. 2006) (quoting *Taylor v. Peoples Gas Light & Coke Co.*, 656 N.E.2d 134, 141 (Ill. App. 1995)).

## <u>CONCLUSION</u>

For these reasons, the Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

*/s/ Chad E. Wallace*
Chad E. Wallace, KY BPR No. 92832
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
602 Sevier Street, Suite 300
Johnson City, Tennessee 37604
Telephone: (423) 928-0181
Facsimile: (423) 928-5694

15

Email: cwallace@bakerdonelson.com

and

*/s/ Thomas Kane*
Anthony Argiropoulos, *pro hac vice*
Thomas Kane, *pro hac vice*
William Gibson, *pro hac vice*
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
281 Witherspoon Street
3rd Floor
Princeton, NJ 08540
Telephone: 609.490.4860
Email: tkane@bakerdonelson.com

*Attorneys for Defendant Concord Company*
*of Tennessee, PLLC*

16

## CERTIFICATE OF SERVICE

It is hereby certified that on May 20, 2026, the foregoing was electronically filed with the clerk of the court by using the ECF system which will send an electronic copy to all counsel of record. A copy will also be mailed to:

William Trach, Esq., *pro hac vice*
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA  02116
Telephone: 617.948.6000
Email: william.trach@lw.com

*Attorney for Plaintiff*

/s/ Thomas Kane
Thomas Kane

17